# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CARLA M.-J.,**[1] | Case No. 3:20-cv-01908-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI**, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Jeffrey Hugh Baird, Dellert Baird Law Office, 2825 NE Brazee St., Portland, OR 97212.
Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204;
Edmund Darcher, Special Assistant United States Attorney, Office of General Counsel, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Attorneys for Defendant.

**IMMERGUT, District Judge**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, is
substituted for Andrew Saul as Defendant. *See* Fed. R. Civ. P. 25(d).

Plaintiff, Carla M.-J., seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted) (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

PAGE 2 – OPINION AND ORDER

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1958. AR 50. She has past relevant work as a real estate sales agent, and has a college education. AR 26, 28, 101. Plaintiff filed an application for DIB on June 10, 2017, alleging disability since January 12, 2017. AR 93, 180.

Plaintiff's application was denied initially and upon reconsideration. AR 93, 108, 118. Plaintiff requested a hearing. AR 121. Plaintiff appeared with counsel at an administrative hearing on May 21, 2019, before ALJ Steve Lynch. AR 24.

On June 5, 2019, the ALJ issued a decision finding Plaintiff not disabled. AR 92–102. Plaintiff requested review of the ALJ decision by the Appeals Council. On June 25, 2020, the Appeals Council granted Plaintiff's request for review, and on September 24, 2020, the Appeals Council issued a decision, in which it adopted the ALJ's finding and conclusions except that the Appeals Counsel modified Plaintiff's date last insured to September 30, 2019, from December 31, 2018. AR 4–7. The Appeals Council's September 24, 2020 decision, including the portions of the ALJ's findings adopted by the Appeals Council, is the Commissioner's final administrative decision in this case. Plaintiff now seeks review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (supplemental security income); *Bowen v. Yuckert*, 482 U.S. 137,

PAGE 3 – OPINION AND ORDER

140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
    416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
    proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
    his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience,
    is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is
> not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
> 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
> she is disabled.

*Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's and Appeals Council's Decisions

The ALJ first found that Plaintiff was last insured on December 31, 2018. AR 95. At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity from January 12, 2017, her alleged onset date, through her last insured date. *Id.* The ALJ found at step two that Plaintiff had the following severe impairments: degenerative joint disease with knee replacement and degenerative disc disease of the spine. *Id.* At step three, the ALJ concluded that, although these impairments constituted severe impairments under 20 C.F.R. § 404.1520(c), the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 95–96.

The ALJ found at step four that Plaintiff has the RFC to "perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb, knee and crawl" and that she can "frequently stoop, and frequently reach overhead." AR 97. Additionally, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

The ALJ determined that Plaintiff was able to perform past relevant work as a real estate sales agent, as "the work did not require the performance of work-related activities precluded by [her] residual functional capacity." AR 101. Therefore, the ALJ found that Plaintiff was not under a disability from January 12, 2017 through December 31, 2018. *Id*.

The Appeals Council adopted all of the ALJ's findings, except the Appeals Council declined to adopt the ALJ's finding as to the last insured date, and found Plaintiff was last insured through September 30, 2019. AR 4–5. The Appeals Council also rejected Plaintiff's contention that the ALJ "erroneously rejected law witness statements." AR 4.[3]

## DISCUSSION

Plaintiff raises three contentions: (1) the ALJ erred in evaluating the consultative medical opinion of Kim Webster, M.D.; (2) the ALJ erred in rejecting Plaintiff's subjective symptom testimony; and (3) the ALJ erred by failing to address lay witness evidence. ECF 10. In reply, Plaintiff also contends that the appointment of former-Commissioner Andrew Saul was unconstitutional. ECF 13. Each contention is addressed in turn, below.

---

[3] Because the Appeals Council adopted the ALJ's findings, aside from the date last insured, which is not at issue here, this Court primarily references the ALJ's underlying decision in its analysis. *See, e.g.*, *James v. Berryhill*, No. 6:17-cv-00600-PK, 2018 WL 2120275 (D. Or. May 8, 2018) (reviewing ALJ's findings where the ALJ's findings were adopted by the Appeals Council).

## A.  No Harmful Error in ALJ's Evaluation of the Medical Opinion of Dr. Webster

### 1.  Legal Standard

Plaintiff filed her application for benefits on October 31, 2017. AR 15. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. *Id*. §§ 404.1520c(c), 416.920c(c). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id*. §§ 404.1520c(b), 416.920c(b). The ALJs are not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id*. §§ 404.1520c(b)(3); 416.920c(b)(3).

#### a.  Applicability of 2017 Regulations

As an initial matter, parties disagree whether Ninth Circuit standards continue to be controlling in light of the new regulations, specifically whether the "clear and convincing" and "specific and legitimate" standards still apply. *See* ECF 10 at 6–7 (arguing "the Ninth Circuit standards for rejecting medical opinion survive the regulatory change"); ECF 12 at 8–11 (arguing that "the 2017 regulations require only that ALJs explain how they considered the supportability and consistency factors"); ECF 13 at 2–3. The Ninth Circuit has not yet addressed whether or how the 2017 regulations alter the standards for rejecting medical opinions. *See, e.g.*,

*Titus L. S. v. Saul*, No. 2:20-cv-04825-AFM, 2021 WL 275927, at *6 (C.D. Cal. Jan. 26, 2021)

("[I]t is not clear whether the Ninth Circuit precedent requiring an ALJ provide 'clear and

convincing' or 'specific and legitimate reasons' before rejecting a treating source's medical

opinions remains viable."); *Scott D. v. Comm'r of Soc. Sec.*, No. C20-5354 RAJ, 2021 WL

71679, at *4 (W.D. Wash. Jan. 8, 2021) ("The Ninth Circuit has not yet considered whether the

2017 regulations will cause it to reevaluate the standards . . . for review of medical opinions.");

*Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020).

And there is a lack of consensus among district courts within this Circuit as to whether and how

the prior standards apply. *See, e.g.*, *Scott P. v. Kijakazi*, No. 6:20-cv-1483-SI, 2022 WL 326107,

at *7 (D. Or. Feb. 3, 2022) (finding under the new regulations "that the ALJ must still provide

specific and legitimate reasons in analyzing medical opinions"); *Patricia F. v. Saul*, No. C19-

5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) ("At the least, [the new

regulations] appear[ ] to necessitate that an ALJ specifically account for the legitimate factors of

supportability and consistency in addressing the persuasiveness of a medical opinion."); *Thomas

S. v. Comm'r of Soc. Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11,

2020) ("The Court will therefore consider whether the ALJ specifically and legitimately

explained how he considered the supportability and consistency factors regarding the providers'

opinions."); *Ysemia O. v. Comm'r of Soc. Sec.*, No. 6:20-cv-1715-JR, 2022 WL 124525, at *3

(D. Or. Jan. 13, 2022) ("In summary, the new regulations still require ALJs to articulate their

reasoning, specifically addressing how they considered the consistency and supportability

factors."); *Jeremiah F. v. Kijakazi*, No. 2:20-cv-00367-SAB, 2021 WL 4071863, at *5 (E.D.

Wash. Sept. 7, 2021) (noting the court has "held that the ALJ did not err in applying the new

regulations over Ninth Circuit precedent, because the result did not contravene the

Administrative Procedure Act's requirement that decisions include a statement of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (citation omitted)).

This Court is persuaded that "[t]he new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain[s] binding on this Court." *Carrie R. C. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-01535-MK, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) (noting ALJs still must not "cherry-pick evidence" or "dismiss a medical opinion without providing a through, detailed explanation"); *see also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) ("The new regulations also do not clearly supersede the 'specific and legitimate' standard. That standard is not an articulation of how ALJs must weigh or evaluate opinions, but rather a standard by which the court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence."). "This Court is bound by precedent of the Ninth Circuit and may not overrule a decision from that court." *Kathleen G.*, 2020 WL 6581012, at *3. Accordingly, until the Ninth Circuit provides further guidance, this Court will continue to require the ALJ to provide specific and legitimate reasons for why a medical opinion is inconsistent with or unsupported by the evidence under the new regulations. *Scott P.*, 2022 WL 326107, at *7.

### 2.  Analysis

Kim Webster, M.D., performed a consultative examination of Plaintiff on October 5, 2017. AR 333. Dr. Webster noted diagnoses of left and right knee pain, pain over the right gluteal area, neck, and right shoulder, neuropathy, and depression. AR 339. However, Dr. Webster also noted that as to the right knee pain, "[t]he only abnormality . . . was a slight hyperextension," that Plaintiff had a "normal neuromuscular exam" of her gluteal area, neck, and shoulder, that Plaintiff was "without any impairment from the neuropathy," and "currently on no

medications" for depression. *Id*. Dr. Webster then assessed that Plaintiff was limited to two hours of standing and walking and should not "work in an environment with pulmonary irritants." AR 339–40. The ALJ found Dr. Webster's opinion "unpersuasive," "not well-supported," and "inconsistent with the record." AR 100.

Plaintiff contends that "the ALJ erred in his consideration of [ ] Dr. Webster's opinion," by applying the incorrect legal standard and failing to "give specific and legitimate reasons, supported by substantial evidence, for rejecting the limitations . . . and the medical opinion of" Dr. Webster. ECF 10 at 4, 7.[4] This Court disagrees.

The ALJ meets his burden of providing specific and legitimate reasons supported by substantial evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ provided a factual summary of Plaintiff's symptoms and impairments, the medical evidence, and the ALJ's interpretation and determination as to which evidence was or was not persuasive. AR 97–101. As to Dr. Webster, the ALJ provided specific and legitimate reasons for why the opinion was unpersuasive. The ALJ explained that Dr. Webster's opinion was "not well-supported" by his own records. AR 100. As to supportability, the "more relevant the objective medical evidence and supporting

---

[4] Plaintiff provides argument only for the limitation related to standing and walking. ECF 10 at 7–8; ECF 13 at 2–3. Plaintiff does not include any argument related to the ALJ's assessment of Dr. Webster's other opinions, including his discounting of Dr. Webster's opinion that Plaintiff should be limited to environments without pulmonary irritants. AR 100. Thus, any challenge to the ALJ's assessment of Dr. Webster's opinion, beyond those regarding standing and walking are waived. *See Smith v. Berryhill*, No. 5:18-cv-00178-MAA, 2018 WL 4998125, at *3 n.2 (C.D. Cal. Oct. 12, 2018) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)).

explanations presented by a medical source are to support [their] medical opinion[ ], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Here, while Dr. Webster opined that Plaintiff was "was limited to two hours of standing and walking due to [Plaintiff's] knee impairments," during his examination of Plaintiff, Dr. Webster assessed Plaintiff's left knee as "normal" and found only "slight hyperextension" in her right knee. AR 100. Moreover, at the exam, Dr. Webster noted that Plaintiff's "balance . . . seems relativ[e]ly good," and while she holds a cane in one hand, "[t]here is no obvious reason why she needs it," she "rarely actually places the bottom [of the cane] on the ground," and her "[g]ait was normal." AR 336; *see* AR 100 ("[Plaintiff's] performance on exam does not logically support this limitation.").

The ALJ also explained Dr. Webster's assessment was inconsistent with the record. AR 100. The "more consistent a medical opinion[ ] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ cited Dr. Webster's assessment of Plaintiff's "frequently good range of motion," "normal gait," and "normal muscle bulk, tone, and strength." AR 100 (citing AR 335, 337, 339). The ALJ also cited medical records from a July 10, 2017 visit to an urgent care, in which the doctor assessed a "normal" gait, AR 322, and from a February 4, 2019 physical examination by Dr. Donald Roberts which noted only a "slightly stiff gait on the left," "good stability of the knee," and "full active extension of the knee," AR 358.

The ALJ considered the relevant factors under the new regulations—supportability and consistency—and provided specific and legitimate reasons, supported by substantial evidence, for why Dr. Webster's opinion was unpersuasive. The ALJ did not "supplant Dr. Webster's medical opinion" with his own, ECF 10 at 8; rather, the ALJ determined, and the Appeals

Council adopted, that under the framework set forth in the new regulations, Dr. Webster's opinion was not persuasive, as it was neither consistent with nor supported by the record. *See* 20 C.F.R. §§ 404.1520c, 416.920c. While Plaintiff disagrees with the ALJ's analysis, the findings were reasonable, and this Court must uphold the ALJ's reasonable conclusion "[w]here evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 679; *see also Batson*, 359 F.3d at 1193, 1196. This Court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193, 1196.

**B.  No Harmful Error in ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

    **1.  Legal Standard**

There is a two-step process for evaluating a plaintiff's testimony about the severity and limiting effect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the plaintiff "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit

the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a plaintiff's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the plaintiff's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

Plaintiff submitted a Function Report in June 2017. AR 215–38. In part, she described pain while walking, an inability to drive long distances, AR 215, that her "knees ache" when walking, and that she can only walk "short distances" before needing to rest "until [the] pain subsides," AR 220. Plaintiff also indicated she uses aids such as a cane or walker, due to her knee issues, but does not take any medications because "they make [her] upset/suicidal." AR 221. Plaintiff attached additional remarks, in which she explained that she had multiple surgeries to her left knee and currently suffers from pain in both knees. AR 223. She also detailed her mental health struggles. AR 223–24.

During her May 2019 hearing, Plaintiff testified about her knee problems. She explained that she had a knee replacement in 2008 and a "revision" surgery shortly after due to complications with the initial surgery. AR 29–30. She also explained that she began experiencing problems with her other knee "about a year and a half ago," which she attributed to issues with her "ligaments on the right side." AR 30–31. She further testified that she needs a cane or other supportive device "to walk any length." AR 34. *Compare* AR 33 (stating, by Plaintiff, that she

forgot her cane when she was examined by Dr. Webster in 2017), *with* AR 336 (documenting, by Dr. Webster, that Plaintiff had a cane, but did not rely on it, during her 2017 exam).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 97. But the ALJ also found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. Plaintiff objects and contends that the ALJ failed to "explain how his summary of the evidence related to Plaintiff's allegations about the impact of her impairments on her ability to sit, stand, or walk for extended periods," and "failed to be specific, clear, and convincing." ECF 10 at 10.[5] This Court disagrees.

The ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony. The ALJ pointed to "specific facts in the record" in making his determination. *Burrell*, 775 F.3d at 1138. Important to the ALJ's determination was that Plaintiff's symptom testimony was inconsistent with objective medical records. *See Batson*, 359 F.3d at 1196 ("Because the ALJ considered the claimant's testimony to be contradictory and unsupported by either the objective medical evidence or any persuasive reports of his doctors, the district court did not err in affirming the ALJ's determinations about [the claimant's] credibility."). The ALJ noted that imaging of Plaintiff's knees showed stability and that the knee replacement implant was functioning properly. AR 326 (noting "[s]table appearance of the left knee arthroplasty" in 2017); AR 358 (noting "right knee x-ray shows that the joint space is well preserved," "implant . . . appears to be well fixed," and "overall alignment looks good" in 2019). Plaintiff's gait was

---

[5] As noted above, because Plaintiff objects only to the ALJ's discussion of Plaintiff's "ability to sit, stand, or walk" and refers only to Plaintiff's testimony as to her knees, ECF 10 at 9–10, this Court limits its review to the ALJ's assessment of Plaintiff's testimony regarding her knees and her ability to sit, stand, or walk. Any contention regarding other symptom testimony has been waived.

assessed as "normal." AR 322. The ALJ further referenced a 2018 examination for knee pain and

swelling, at which the doctor diagnosed "[p]ossible medial collateral ligament tear" in her right

knee, administered an injection of Ketorolac Tromethamine, referred her to an orthopedist, and

discharged her. AR 345–46. In February 2019, Plaintiff presented to an orthopedist for

evaluation of knee problems and pain. AR 356. The doctor concluded that while Plaintiff had

"bilateral pain limitations" and "a slightly stiff gait on the left," she did not "warrant surgery, had

good stability of her left knee, and had "full active extension of [her right] knee." *Id*. The doctor

noted a contusion on her right knee but attributed it to her being hit by one of her dogs recently.

*Id*. Finally, the ALJ discussed Dr. Webster's findings in 2017. AR 99. Dr. Webster's

examination resulted in notations that Plaintiff's balance was relatively good and that while she

carried a cane, she did not appear to have a genuine physical need for it and her gait was normal.

AR 336. Plaintiff was able to get on and off the exam table and go from sitting to supine without

difficulty. *Id*. Dr. Webster assessed a "full range of motion in both knees." AR 337.[6]

The ALJ also explained that Plaintiff's "knee disorders have been treated

conservatively." AR 97. "[E]vidence of 'conservative treatment' is sufficient to discount a

[plaintiff's] testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751

---

[6] Plaintiff argues that objective findings "cannot be the sole basis for rejecting" subjective symptom testimony. ECF 10 at 10 (citing 20 C.F.R. § 404.1529(c)(3)). However, as explained in this Opinion, the ALJ relied not only on the medical evidence, but also on Plaintiff's activities of daily living and conservative course of treatment in coming to his conclusion. Moreover, Plaintiff's citations to caselaw are inapposite, as those cases specifically refer to the challenges of evaluating evidence of fibromyalgia, which is not at issue in this case. *See Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (explaining the "recurrent problem" of ALJs failing to "properly analyze [plaintiffs'] fibromyalgia-related symptoms"); *Hamilton-Carneal v. Colvin*, 670 F. App'x 613, 614 (9th Cir. 2016) (finding harmful error where the ALJ's "central factor" in determining the plaintiff was not credible was that her subjective complaints were "out of proportion to and not corroborated by objective medical evidence" because fibromyalgia is "poorly-understood within the medical community" and "diagnosed entirely on the basis of patients' reports of pain" (internal quotation marks and citations omitted)).

(9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). During the relevant time period, the ALJ noted that Plaintiff's knee pain had been treated with a Ketorolac Tromethamine injection and Ibuprofen in 2018. AR 346; *see also* AR 356 (noting knee pain did not warrant surgery).

Finally, the ALJ found that Plaintiff's "activities of daily living are consistent" with the assessed RFC. AR 99. The ALJ explained that Plaintiff was able to do tasks "which require extended walking, standing, and carrying," such as cooking, shopping, and driving. *Id*. (citing AR 217–18). Though the ability to do minimal activities does not suffice to reject a plaintiff's testimony about her symptoms, *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012), "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the record indicates that Plaintiff completes household chores, such as cooking and vacuuming, and leaves her home to engage in activities such as driving, shopping, and going to the gym to swim, which suggests an inconsistency with Plaintiff's testimony regarding the severity of pain in her knees and inability to sit, stand, or walk for extended periods. AR 36, 216–19; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (noting evidence of daily activities could undermine a plaintiff's complaints).[7]

---

[7] Plaintiff contends that the ALJ erred in his reliance on her taking her dogs to the dog park as evidence undermining her symptom testimony. ECF 10 at 12 ("[T]he record contains no information as to what taking her dogs to the dog park entailed, how often she did it, or how long she stayed when she did. Absent some detail about the activity, it could not serve as substantial evidence supporting the ALJ's findings."). The ALJ found that Plaintiff's ability to care for her dogs "suggests an ability for extended standing." AR 99; *see also* ECF 12 at 7–8. The assumption that Plaintiff stood for extended periods of time while caring for her dogs is not confirmed by the record; it is possible that Plaintiff sat on a bench or otherwise relied on a support while at the dog park. *See Batson*, 359 F.3d at 1197. Nevertheless, in light of the other reasons given by the ALJ for discrediting Plaintiff's subjective symptom testimony, this Court finds there was substantial evidence supporting the ALJ's decision to do so, and any error by

"[T]he ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Accordingly, this Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

## C.  No Harmful Error in ALJ's Consideration of Lay Witness Testimony

### 1.  Legal Standard

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). An ALJ may discount lay witness testimony only by providing reasons that are germane to each witness. *Id*. at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (alterations in original) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)); *see also id.* ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

### 2.  Analysis

Plaintiff's record contains two lay witness statements. The first is a letter dated May 7, 2019 from Plaintiff's son, Carlson M., "to impart [his] observations of the health problems of

---

these assumptions regarding Plaintiff taking her dogs to the dog park is harmless in light of the other reasons provided.

[his] mother." AR 285–86. In the letter, he described her physical ailments, including that "[m]owing the lawn . . . usually results in a visit to a health clinic due to pulled ligaments in her legs," and that Plaintiff takes "a solid minute to walk down a flight of 12 steps." AR 285. He also stated that he has observed Plaintiff sitting for long periods of time, and having trouble doing "everyday household chores . . . without severe pain." *Id*. Carlson M. also noted Plaintiff's struggles with mental health. *Id*. The second is a third-party Function Report from Plaintiff's friend dated July 7, 2017. AR 239–47. In it, he reported that Plaintiff "has trouble walking normal[l]y," and has emotional problems. AR 239. He reported that her medical conditions affect her ability to walk and get along with others. AR 244. He also attached a "statement which was written by [Plaintiff] and which [he] agree[s] is correct." AR 246–47. He noted at the bottom of the letter that he "do[es] not have good knowledge of her physical state." AR 247.

The ALJ did not explicitly discuss either statement. Rather the ALJ explained that the "current rules do not require an ALJ to weigh evidence and opinions from non-medical sources." AR 100 (noting the Social Security Administration had "rescinded SSR 06-3p"). The Appeals Council "found that the lay witness opinions are sufficiently addressed in the [ALJ's] decision," and that an ALJ "is not required to articulate how nonmedical opinion was considered using the standards for medical opinion evaluation." AR 4 (citing 20 C.F.R. § 404.1520c(d)). Plaintiff argues that the ALJ's "failure to articulate reasons, in itself, is error," and that the regulations "do[ ] not give the ALJ the authority to silently reject lay witness evidence." ECF 10 at 12–13. In response, the Commissioner "acknowledge[d] that the ALJ did not give germane reasons for discounting [the lay witness] statements," as required, but argued that the error was harmless. ECF 12 at 14–15.

The Ninth Circuit has explained that "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). However, the Ninth Circuit has also recognized that errors as to the evaluation of lay witness testimony may be harmless. *Molina*, 674 F.3d at 1114. Given the Commissioner concedes error in this case, ECF 12 at 15, this Court considers only whether this error was harmful, and finds it was not.

The failure to mention lay witness testimony is not dispositive on the issue of harm. Plaintiff argues in reply that the total failure to mention any lay witness testimony differentiates her case from those in which the Ninth Circuit found harmless error. ECF 12 at 4–5 (citing *Molina*, 674 F.3d 1104; *Valentine*, 574 F.3d 685). Plaintiff's contention, however, misses the mark. Indeed, the case Plaintiff cites says as much:

> [T]he essential holding of *Molina* is that error in failing to mention such testimony will be deemed harmless if the lay witnesses describe the same symptoms and limitations as the claimant, and the reasons the ALJ gave for rejecting the testimony of the claimant apply equally to that of the lay witnesses. In other words, it matters not that the specific reasons that were at issue in *Molina* are different from those that [are] at issue in the case at hand.

*Moore v. Colvin*, No. 3:12-cv-05574-BHS, 2013 WL 1944473, at *8 (W.D. Wash. Apr. 16, 2013), *report and recommendation adopted,* No. 3:12-cv-05574-RBL, 2013 WL 1944576 (W.D. Wash. May 9, 2013).

In this case, the descriptions of Plaintiff's pain and limitations offered by her son and friend are substantially similar to those offered by Plaintiff. All describe Plaintiff's knee troubles, including her pain while walking and doing household chores and issues arising from her knee surgeries, AR 29–30, 215, 220, 223, 239, 244, 247, 285, and her mental health issues, AR 223–24, 239–40, 285. The reasons given by the ALJ to discount Plaintiff's subjective symptom

testimony also apply to the lay testimony given by Plaintiff's son and friend. No reasonable ALJ would have come to a different disability determination given the substantial similarity between the testimony and the clear and convincing reasons given for discounting Plaintiff's testimony. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Therefore, the ALJ's error was harmless. *See Molina*, 674 F.3d at 1122 ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the plaintiff's] own testimony, and the ALJ's reasons for rejecting [the plaintiff's] testimony apply with equal force to the lay testimony."); *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

**D.  Separation of Powers Violation Does Not Entitle Plaintiff to Relief Sought**

In her reply brief, Plaintiff contends, for the first time, that her underlying proceedings were "[t]ainted by the [u]nconstitutional [a]ppointment and [t]enure" of former-Commissioner Andrew M. Saul. ECF 13 at 6. Plaintiff, citing to the Supreme Court's decisions in *Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), argues that because the "Commissioner of the Social Security Administration is vested with power similar to those of the Director of the CFPB[,] . . . [t]he structure of the Social Security Administration is constitutionally flawed given the breadth of these powers and the statutory limits placed on the President's ability to remove the Commissioner." ECF 13 at 6. Accordingly, Plaintiff contends that because the Commissioner lacked authority to adjudicate, "the ALJs and Appeals Council had no authority to make findings of fact and issue final decisions." *Id*. at 7. Plaintiff also cites to the Supreme Court's decision in

PAGE 20 – OPINION AND ORDER

*Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), and argues that her case presents the converse factual scenario to *Lucia*, but warrants the same remedy: whereas in *Lucia*, "the ALJs had no authority to adjudicate because they were not constitutionally appointed," in Plaintiff's case, the "agency's actions have been completed under unconstitutional delegated authority" and the "functionaries dependent on this authority could receive it, but the single member-head could not delegate it." ECF 13 at 7.

### 1.  Analysis

As an initial matter, courts generally do not consider arguments made for the first time in reply. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996). Though Plaintiff contends she was unable to raise these issues earlier in her Complaint, ECF 13 at 8, she failed to raise them even in her opening brief, which was filed on July 6, 2021, *after* the Supreme Court's decisions in *Seila Law* and *Collins*. Therefore, this line of argument is waived. Nevertheless, even if this Court were to consider the arguments on the merits, they are not persuasive.

First, Plaintiff does not challenge the appointment of the ALJs who presided over the Appeals Council decision, nor does she provide any support for her contention that Commissioner Saul's appointment was constitutionally defective. As to the ALJs, Plaintiff states that they had the "authority to receive" the Commissioner's delegated authority; the issue instead, Plaintiff argues, is that the Commissioner himself did not have the authority to delegate. *See* ECF 13 at 7. Because Plaintiff is not arguing that the ALJs who rendered the final decision in her case were unconstitutionally appointed, there is no colorable appointments clause violation as to the ALJs. *See Collins*, 141 S. Ct. at 1763 (Thomas, J. concurring) (explaining that appointments clause cases "ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an officer must be properly appointed before he can legally act as an officer," and where all officers were properly appointed, "[t]here is thus no

barrier to them exercising power in the first instance"). As to Commissioner Saul, Plaintiff has made no compelling argument that his appointment was improper and conflates the Supreme Court's jurisprudence as to unconstitutional tenure protection with its jurisprudence as to unconstitutional appointments. Plaintiff relies on *Seila Law*, *Collins*, and an Office of Legal Counsel ("OLC") memorandum, but those considered whether removal restrictions violated the separation of powers, not whether the appointments clause was violated. *See Seila Law*, 140 S. Ct. at 2197 (holding "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers"); *Collins*, 141 S. Ct. at 1783 ("The Recovery Act's for-cause restriction on the President's removal authority violates the separation of powers."). The Court in *Collins* in fact distinguished the issue at hand—removal— from the issue in *Lucia*—appointment—and explained that in *Collins*, "there was no constitutional defect in the statutorily prescribed method of appointment," and thus *Lucia* was not dispositive. *Collins*, 141 S. Ct. at 1787–88. Finally, the OLC memorandum opined that the President could *remove* the Commissioner at will and that the *removal restriction* was constitutionally unenforceable. *See* Constitutionality of the Commissioner of Social Security's Tenure Protection, Op. O.L.C. (July 8, 2021). Plaintiff's reliance on *Lucia* and an appointments clause violation is misplaced.

At bottom, Plaintiff's claim is based on an allegedly unconstitutional tenure protection. Assuming arguendo that the removal provision, 42 U.S.C. § 902(a)(3), violates separation of powers, Plaintiff is still not entitled to relief. "*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021). In *Collins*, the Supreme Court refused to hold that actions taken by an officer subject to an unconstitutional removal restriction were void ab initio. *Collins*, 141 S.

Ct. at 1788 & n.24; *Brand v. Kijakazi*, No. 2:20-cv-02219-NJK, 2021 WL 5868131, at *6 (D.

Nev. Dec. 10, 2021) ("The Supreme Court has made clear that the mere existence of

unconstitutional tenure protection is not grounds for relief[.]"). Rather, the Court explained that

to be entitled to relief, a plaintiff must show that the unconstitutional provision caused

"compensable harm." *Collins*, 141 S. Ct. at 1789; *see also Dondia M. L. v. Kijakazi*, No. 2:20-

cv-06497-AFM, 2022 WL 60591, at *3 (C.D. Cal. Jan. 5, 2022) (explaining that "a claimant

seeking relief must show that an unconstitutional removal restriction actually caused her harm").

        But Plaintiff has not identified any harm linked to the Commissioner's alleged

unconstitutional tenure protection. "Social Security claimants appealing a denial of benefits face

an uphill battle in trying to establish the necessary link to obtain relief based on the

unconstitutional removal provision." *Brand*, 2021 WL 5868131, at *5; *see also Collins*, 141 S.

Ct. at 1802 (Kagan, J., concurring in part) ("doubt[ing] the mass of SSA decisions—which

would not concern the President at all—would need to be undone," because "[w]hen an agency

decision would not capture a President's attention, his removal authority could not make a

difference"). The Appeals Council's decision has been reviewed by this Court and found to be

free of harmful legal error and supported by substantial evidence; this indicates that the

Commissioner's unconstitutional removal protection did not result in harm to Plaintiff. *See*

*Kristine A. v. Comm'r of Soc. Sec.*, No. C21-5239-SKV, 2021 WL 5918128, at *8 (W.D. Wash.

Dec. 15, 2021). Nor has Plaintiff identified any defective regulations promulgated, how they

were applied to her case, or how they caused her harm. *See Nudelman v. Comm'r of Soc. Sec.*

*Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022). Nor

can Plaintiff show that "were it not for the unconstitutional removal restriction, the President

might have replaced Commissioner Saul with another Commissioner who would have removed

the ALJ[s] and replaced [them] with [ ] ALJ[s] who would" have found in Plaintiff's favor.

*Thomas E. v. Comm'r of Soc. Sec.*, No. C21-5107-BAT, 2021 WL 5415241, at *5 (W.D. Wash. Nov. 19, 2021).[8] Therefore, even assuming for the sake of argument that § 902(a)(3) violates separate of powers, it does not require reversal and remand of the Appeals Council's decision.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 10th day of March, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[8] Plaintiff's citation to a news article in which a White House official stated that Commissioner Saul "reduced due process protections for benefits appeals hearings," ECF 13 at 8 (internal quotation marks and citation omitted), is equally unpersuasive. This statement does not establish a due process violation, and Plaintiff has not identified any evidence of a violation resulting in harm in her case. *See Kristine A.*, 2021 WL 5918128, at *8 ("[I]t is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due.").

PAGE 24 – OPINION AND ORDER